IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br><br><br>           vs.<br><br><br>BRADLEY GRANT KITCHEN, et al.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTIONS TO SUPPRESS<br><br><br><br><br><br>Case No. 2:07-CR-895 TS |

Defendants Bolick,[1] Cloward,[2] Clarke,[3] Garrett,[4] and Hadlock[5] have each filed a motion

seeking to suppress statements made by them to Investigator LeDoux.  Defendants concede, as

[1]Defendant Bolick originally filed his Motion as a Motion to Dismiss.  Docket No. 87. The Court denied Defendant Bolick's Motion to Dismiss and converted it into a Motion to Suppress.  Docket No. 174.

[2]Docket No. 56.  Defendant Cloward failed to submit a Memorandum in support of his Motion.  It appears that Defendant Cloward has abandoned his motion.  To the extent that his Motion remains at issue, the following Order applies to him as well as the other Defendants.

[3]Docket No. 84.

[4]Docket No. 82.  Defendant Garrett failed to submit a Memorandum in support of his Motion.  It appears that Defendant Garrett has abandoned his motion.  To the extent that his Motion remains at issue, the following Order applies to him as well as the other Defendants.

[5]Docket No. 37.  As the government has dismissed the Indictment against Hadlock, the Court need not consider the arguments made in her Motion.

1

they must, that they were not in custody and, therefore, it was unnecessary for Investigator

LeDoux to inform them of their rights pursuant to *Miranda v. Arizona*.[6]  Nonetheless,

Defendants argue that their statements should be suppressed because they were made

involuntarily.  In particular, Defendants assert that their statements were induced by fraud, deceit,

trickery, or misrepresentation.  For the reasons discussed below, the Court will deny Defendants'

Motions.

I.  BACKGROUND

For the purposes of these Motions, the Court makes the following findings.

A.    THE INVESTIGATION

Investigator Doug LeDoux works as an investigator in the Fraud Division of the Utah

Department of Insurance.  In or around November 2006, Investigator LeDoux began receiving

complaints concerning real estate speculation in the Provo River Bottoms area.  As his

investigation progressed, Investigator LeDoux sought to interview various individuals whose

names had surfaced during his investigation.  At this point, Investigator LeDoux's investigation

had moved past the point of mere allegations, but was still in its preliminary stages.  It is in this

context that Investigator LeDoux contacted Defendants.

B.    INVESTIGATOR LEDOUX'S INTERVIEWING TECHNIQUE

Investigator LeDoux testified that he had developed a certain interviewing technique, or

"rhythm," that he uses when interviewing individuals.  This technique is set out in an Affidavit

submitted in response to Defendant Bolick's Motion to Dismiss.[7]  Investigator LeDoux's

---

[6]384 U.S. 436 (1966).

[7]*See* Docket No. 91, Ex. A.

interviewing method consists of the following: (1) identifying himself, showing his badge, and stating that he is a criminal investigator; (2) informing the interviewee that he would like to ask some questions and informing the interviewee that participation in the interview is voluntary; (3) informing the interviewee that he is not required to answer the questions and if he does not wish to answer he does not have to; (4) informing the interviewee that, upon request, Investigator LeDoux will terminate the interview and leave; and (5) when an attorney is not present, informing the interviewee that if he wants an attorney present, he is so entitled.[8]  Additionally, Investigator LeDoux testified that he typically indicates that the interviewee is not in custody.

C.      IDENTIFICATION OF A "TARGET"

Investigator LeDoux testified that he could recall one specific conversation where a Defendant asked if he or she was a "target" of the investigation.  As will be discussed below, Defendant Bolick and his attorney made this inquiry.  Investigator LeDoux testified that, at the time the interviews with Defendants were conducted, the investigation was in a preliminary stage and, thus, he was unaware of who would be the focus of the investigation.  As set forth below, when asked if Defendant Bolick was a target of the investigation, Investigator LeDoux refused to identify whether he was or was not a target.[9]

With this basic framework in mind, the Court will turn to Investigator LeDoux's interviews with each of the moving Defendants.

---

[8]*Id*. at ¶ 5.

[9]*Id*. at ¶ 7.

D.      THE INTERVIEWS

     1.      BOLICK

Investigator LeDoux interviewed Defendant Bolick on or about December 11, 2006.  The interview took place at the offices of Defendant Bolick's attorney and his attorney was present during the interview.  At the beginning of the interview, Investigator LeDoux went through his normal interview procedure, as discussed above.  He identified himself, stated that he was a criminal investigator, and showed his badge.  He informed Defendant Bolick and his attorney that he would like to ask some questions and that participation in the interview was voluntary. Additionally, Investigator LeDoux stated that Defendant Bolick was not required to answer questions.

Defendant Bolick's counsel testified that he asked Investigator LeDoux at the beginning of the interview if Bolick as a target of the investigation.  Defendant's counsel testified that Investigator LeDoux stated that Bolick was not a target, that it was an ongoing investigation, that he considered Bolick to be a victim, and that if Bolick's status changed, he would inform Bolick's counsel.[10]  Investigator LeDoux denies he took a position on whether or not Defendant Bolick was a target at the time of the interview.  If Investigator LeDoux had informed Defendant's counsel that Defendant was a target of the investigation, Defendant's counsel stated that he would not have gone forward with the interview.

At no time during the December 11, 2006 interview was Defendant placed under arrest or detained in any fashion.  He was never forced to answer any question.  He was not compelled by

---

    [10]Another attorney for Defendant Bolick also testified that Investigator LeDoux told him that Bolick was not a target of the investigation, but was not present when the interview between Investigator LeDoux and Bolick took place.

subpoena to participate in the interview.  Investigator LeDoux never made any threats toward Defendant Bolick during the interview and, in fact, Defendant's counsel described him as "very pleasant"[11] and described the interview as being "[v]ery friendly."[12]  Defendant Bolick was free to leave the interview at any time.  During the course of the interview, Defendant's counsel was present as his representative.  Defendant's counsel understood that he could terminate the interview at any time.  Defendant's counsel did not advise Defendant Bolick to invoke his Fifth Amendment rights and allowed him to answer all questions that were put to him.

    2.    CLOWARD

Investigator LeDoux interviewed Defendant Cloward on or about December 12, 2006, at Cloward's place of business.  Investigator LeDoux prepared an Interview Report documenting that interview.[13]  The Interview Report contains the following language: "I approached Cloward without appointment and identified myself as a fraud investigator.  I showed my credential, provided a business card and told Cloward that he was not required to speak with me.  He said that [he] understood and was willing to proceed."[14]  The Interview Report does not indicate that Investigator LeDoux informed Defendant Cloward that he had the right to have counsel present at the interview or that Investigator LeDoux would leave if asked.  Investigator LeDoux has no independent recollection of informing Cloward of these things.  However, as set forth above, that information is part of Investigator LeDoux's interviewing technique.  While there is nothing in

---

[11]Tr. at 86:19.

[12]*Id*. at 93:22.

[13]James Ex. 22.

[14]*Id*.

the report to indicate that Investigator LeDoux gave those warnings, there is also no evidence that Investigator LeDoux wavered from his interviewing technique when speaking with Defendant Cloward.

   3.   CLARKE

Investigator LeDoux interviewed Defendant Clarke on or about December 13, 2006.  The interview took place at Defendant Clarke's place of business.  In his interview with Defendant Clarke, Investigator LeDoux went through his normal rhythm.  As discussed above, that rhythm would consist of Investigator LeDoux identifying himself and showing the interviewee his badge, informing the interviewee that he was not required to speak to him, stating that if asked to leave he would do so, and if the interviewee wanted he could have an attorney present. Defendant Clarke confirmed that Investigator LeDoux identified himself as a criminal investigator and explained that he was conducting a criminal investigation.

Defendant Clarke testified that when Investigator LeDoux first approached him, he asked Investigator LeDoux if there was any reason that he should be worried and also asked whether he was under investigation.  Defendant Clarke testified that Investigator LeDoux answered in the negative to both of these questions.  Investigator LeDoux does not recall any such conversation. Defendant Clarke further testified that if Investigator LeDoux had responded in the affirmative he would not have talked to him and would have gotten an attorney.

At the time of the interview, Defendant Clarke knew that he was not under arrest, was not in custody, and that he was free to leave.  Defendant Clarke acknowledged that there was no court order or subpoena requiring him to talk to Investigator LeDoux.  Defendant Clarke knew that he could have terminated the interview, that he could have asked Investigator LeDoux to

6

leave, that he could have left the interview himself, and that he could have obtained counsel if he so desired.

       4.     GARRETT

Investigator LeDoux interviewed Defendant Garrett on two separate occasions at Garrett's place of business on December 14, 2006 and December 15, 2006.  At the time of the interview, Defendant Garrett had known Investigator LeDoux for five or six years.  Defendant Garrett testified that Investigator LeDoux did not indicate that he was free to leave, nor did he indicate that he had the right to have an attorney present.

Defendant Garrett testified that he asked if he was being investigated.  Garrett indicated that Investigator LeDoux did not specify whether he was being investigated.  Investigator LeDoux has no recollection of this conversation.  Garrett testified that if he believed that he was a suspect, he would have asked for an attorney.

Defendant Garrett further testified that he knew that he was free to leave, that he could have stopped the interview, and that he could have gotten an attorney if he chose to do so. Additionally, Defendant Garrett recognized that he was not under arrest, that he was not being detained, and that there was nothing compelling him to speak to Investigator LeDoux. Additionally, Garrett did not invoke his Fifth Amendment right to remain silent.

## II.  DISCUSSION

Defendants argue that their statements to Investigator LeDoux should be suppressed because they were involuntary.

"The prosecution has the burden of proving by at least a preponderance of evidence that the confession was voluntary."[15]  "A defendant's confession is involuntary if the government's conduct causes the defendant's will to be overborne and 'his capacity for self-determination critically impaired.'"[16]  "When determining the admissibility of a defendant's statements, voluntariness depends upon an assessment of 'the totality of all the surrounding circumstances,' including 'both the characteristics of the defendant and the details of the interrogation.'"[17]  "Such factors include (1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to physical punishment."[18] The Court will examine each factor.

First, each moving Defendant is an adult and there is no evidence that any suffer from a mental disability or lacks education.

Second, no detention occurred.  As set forth above, as part of his interviewing technique Investigator LeDoux informs the interviewee that: participation is voluntary, the interviewee is not required to answer questions, he will leave if the interviewee asks, and the interviewee may have an attorney present.  Additionally, Investigator LeDoux typically indicates that the interviewee is not in custody.  The evidence presented at the hearing confirms that Defendants knew that they were not in custody and could terminate the interview.

---

[15]*United States v. McCullah*, 76 F.3d 1087, 1100 (10th Cir. 1996).

[16]*Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973)).

[17]*United States v. Erekson*, 70 F.3d 1153, 1157 (10th Cir. 1995) (quoting *Schneckloth*, 412 U.S. at 226).

[18]*United States v. Toles*, 297 F.3d 959, 966 (10th Cir. 2002).

Third, there is no evidence that any of the interviews was substantial in length.  Turning to the nature of the interviews, there are several facts worth noting.  Each interview took place at Defendant's place of business, with the exception of Defendant Bolick whose interview took place in the conference room of his attorney's law firm.  As noted previously, Defendant Bolick's interview took place with his attorney present.  At no point during any of the interviews were Defendants placed in custody or restrained in any way.  There was no court order or subpoena compelling any of Defendants to speak with Investigator LeDoux.  Those Defendants who testified indicated that they knew that they could terminate the interview at any time.  While there is evidence that Investigator LeDoux wore a gun on his waistband, there is no evidence that his weapon was removed from the holster or displayed in any way.  Finally, there is no evidence that Investigator LeDoux used any threats, violence, or threats of violence in the interviews.  As Defendant Bolick's counsel stated, the interview was "[v]ery friendly."[19]

Fourth, Defendants concede that they were not in custody and, thus, *Miranda* warnings were not required.  As stated above, however, Investigator LeDoux's interviewing technique contained many of those warnings, including: (1) identifying himself, showing his badge, and stating that he is a criminal investigator; (2) informing the interviewee that he would like to ask some questions and informing the interviewee that participation in the interview is voluntary; (3) informing the interviewee that he is not required to answer the questions and that if he does not wish to answer he does not have to do so; (4) informing the interviewee that, upon request, Investigator LeDoux will terminate the interview and leave; and (5) when an attorney is not

---

[19]Tr. 93:22.

present, informing the interviewee that if he wants an attorney present, he is so entitled.[20]

Additionally, Investigator LeDoux testified that he typically indicates that the interviewee is not

in custody.

  While Defendants dispute whether all such warnings were given in their particular

interview, the following evidence was elicited at the evidentiary hearing:

  With regard to the interview with Defendant Bolick, Investigator LeDoux: identified

himself, stated that he was a criminal investigator, showed his badge, informed Bolick and his

attorney that he would like to ask some questions, that participation in the interview was

voluntary, and stated that Defendant Bolick was not required to answer questions.  Defendant

Bolick's counsel testified that he understood that they were free to leave at any time and that the

interview could be terminated.

  Defendant Clarke acknowledged that Investigator LeDoux identified himself as a

criminal investigator and stated that he was conducting a criminal investigation.  Clarke knew

that he was not in custody and that he was free to leave.  Clarke knew that there was nothing

compelling him to speak with Investigator LeDoux.  Further, Clarke knew that he could

terminate the interview, that he could ask Investigator LeDoux to leave, that he could leave

himself, and that he could obtain counsel if he wished.

  Defendant Garrett knew that he was free to leave and that he could have stopped the

interview at any time.  Additionally, Garrett was not in custody and was not compelled to speak

to Investigator LeDoux.

  Finally, there is no evidence that Defendants were subjected to any physical punishment.

---

[20]Docket No. 91, Ex. A, ¶ 5.

Defendants argue that Investigator LeDoux either failed to inform them of the true nature of his investigation or affirmatively mislead them into believing that they were not targets of the investigation.

Courts have upheld the use of deceptive interrogation tactics so long as those tactics are not unduly coercive. The Supreme Court, in *Frazier v. Cupp*,[21] held that an investigator's misrepresentation to a suspect that his co-conspirator had already confessed did not render a confession involuntary.[22] Similarly, the Tenth Circuit has held that an investigator's false statement that officers had recovered the suspect's fingerprints at the victim's house did not render the confession involuntary.[23] In *United States v. Unser*,[24] the Tenth Circuit addressed a situation somewhat similar to the one before the Court. In that case, the agents employed "a measure of subterfuge" in inducing the defendant to speak with them.[25] The agents did not tell the defendant that he was the target of a criminal investigation and, instead, led him to believe that they were simply trying to help him.[26] The court, after reviewing the factors set forth above, found that the defendant's statements to the agents were voluntarily made.[27]

---

[21]394 U.S. 731 (1969).

[22]*Id*. at 739.

[23]*Lucero v. Kerby*, 133 F.3d 1299, 1311 (10th Cir. 1998).

[24]165 F.3d 755 (10th Cir. 1999).

[25]*Id*. at 766.

[26]*Id*.

[27]*Id*. at 767.

Even if the Court were to assume that Investigator LeDoux misled Defendants as to whether or not they were targets of the investigation,[28] the case now before the Court is far removed from those cases in which courts have found statements to be involuntary because of police misrepresentations.  *United States v. Lopez*[29] was one such case where the Tenth Circuit found a defendant's confession to be involuntary.  In that case, during the interrogation of the defendant, the investigator marked pieces of paper with the terms "murder," "mistake," "60," and "6."[30]  The investigator indicated that if the defendant cooperated, he would be looking at six years and that if he did not, he would be looking at sixty.[31]  The trial court found this to be a promise that, if the defendant agreed to cooperate, he would spend fifty-four fewer years in prison.[32]  The Tenth Circuit found that the investigator's promise of leniency to the defendant if he confessed overbore the will of the defendant and made his confession involuntary.[33]  Similarly in *Griffin v. Strong*,[34] the officer had made promises of lesser punishment and physical protection in order to induce the suspect's statement.[35]  As a result of these statements, the court found that the confession made by the suspect was involuntary.

---

[28]The Court need not decide whether Investigator LeDoux misled Defendants as to whether or not they were targets of the investigation because the result would be the same.

[29]437 F.3d 1059 (10th Cir. 2006).

[30]*Id*. at 1061.

[31]*Id*.

[32]*Id*. at 1064.

[33]*Id*. at 1065.

[34]983 F.2d 1540 (10th Cir. 1993).

[35]*Id*. at 1543–44.

The United States District Court for the District of Kansas also addressed a situation where false statements by the investigating officer resulted in a coerced confession.  In *United States v. Alcarez-Mora*,[36] an officer informed the defendant that if he failed to cooperate he would never see his children again.[37]  There, the court recognized "that not every false statement by an officer during the course of a defendant's interview will render an otherwise voluntary confession involuntary."[38]  In that case, "however, the false statement did not merely relate to the defendant's degree of guilt or the strength of the evidence against him, but to a sure and severe familial consequence of not cooperating with the officers.  The purpose and objective of that threat was to cause defendant to fear that if he failed to cooperate, he would never see his daughters again."[39]  The court found, based on the totality of the circumstances, that the officer exerted improper influence or undue psychological pressure on the defendant which overbore his will and rendered his confession involuntary.[40]

This is not the situation before the Court.  Here, there is no evidence of promises of leniency as in *Lopez* and *Griffin*.  Even if Investigator LeDoux advised Defendants that they were not targets of the investigation, the Court cannot find that this was a promise of leniency.  Nor is there any evidence of threats such as those in *Alcarez-Mora*.  Having considered all of the above-listed factors, the Court finds that the statements made by Defendants to Investigator LeDoux

---

[36]246 F.Supp.2d 1146 (D. Kan. 2003).

[37]*Id.* at 1153.

[38]*Id.* at 1155.

[39]*Id.*

[40]*Id.*

were voluntary.  For the reasons set forth above, the Court will deny Defendants' Motions to

Suppress.  Because of this ruling, there is no need for the Court to conduct a *Kastigar*[41] hearing,

nor is it necessary to disqualify Agent LeDoux from this case.

III.  CONCLUSION

Based upon the foregoing, it is therefore

ORDERED that Defendants' Motions to Suppress (Docket Nos. 56, 82, 84, and 87) are

DENIED.  It is further

ORDERED that the time from the filing of the Motions to Suppress through August 13,

2008, is excluded from the computation of the Speedy Trial Act time pursuant to 18 U.S.C. §

3161(h)(1)(F) and (J).

DATED   July 31, 2008.

BY THE COURT:

_____

TED STEWART
United States District Judge

---

[41]*Kastigar v. United States*, 406 U.S. 441 (1972).

14